Saheb SAHU, Appellant,

v.

**IOWA BOARD OF MEDICAL EXAMINERS, Appellee.**

No. 94–399.

Supreme Court of Iowa.

Sept. 20, 1995.

## I. *Background.*

The petitioner, Dr. Sahed Sahu, is a board-certified neonatologist and pediatrician, licensed to practice medicine and surgery in the State of Iowa. He is the controlling shareholder of Newborn & Pediatric Specialists, P.C. He established the billing system used by the corporation and supervised the office manager who prepared the medical claim forms. The corporation has participated in the Medicaid program in the State of Iowa since its incorporation in 1982. After completion of a thirty-three month audit of the corporation, the auditors concluded in 1985 that the corporation had submitted inaccurate Medicaid claims. The inaccuracies included misdated billings for histories and physicals, billings for services after patients were discharged, and billings for services after patients were transferred to the care of another doctor.

Sahu was indicted on federal criminal charges in a seventy-five count indictment for his inaccurate billings under the Medicaid program. In September 1989 he was acquitted of these charges after a jury trial. The Board of Medical Examiners (Board) delayed initiating disciplinary proceedings while the criminal charges were pending.

On January 17, 1991 the Board filed a complaint and statement of charges against Sahu for incorrect billing practices in 1984. These administrative disciplinary proceedings involve sixteen of the seventy-five alleged false claims for which he was indicted. After a hearing, a panel consisting of three members of the Board issued a proposed decision and order. The panel found Sahu had knowingly and willfully made misleading, deceptive, or untrue representations in Medicaid claims signed by him in 1984. The panel proposed a thirty-day suspension of his license to practice medicine, a five-year probation, and a civil penalty of $1000. The panel also recommended he complete continuing education regarding billing procedures.

On appeal to the full Board, the Board adopted and incorporated the proposed decision as its final decision. After Sahu petitioned the district court for judicial review,

John R. Sandre of Coppola, Sandre & McConville, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Theresa O'Connell Weeg, Assistant Attorney General, for appellee.

Carlton G. Salmons of Austin, Gaudineer, Austin, Salmons & Swanson, Des Moines, for amicus curiae Wesley Riggs Bagan.

Considered by HARRIS, P.J., and LARSON, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

The petitioner seeks judicial review of a disciplinary action taken against him by the medical licensing board for incorrect billing in his medical practice. The district court affirmed the board's decision. On appeal, we reverse and remand.

the court affirmed the Board's decision. Sahu appeals.

## II. *Scope of Review.*

■ Judicial review of a contested proceeding both in the district court and the appellate courts is to correct errors at law. Iowa Code § 17A.19 (1993); *Fisher v. Board of Optometry Examiners,* 510 N.W.2d 873, 875 (Iowa 1994). We must determine whether the agency decision is supported by substantial evidence when reviewing the record as a whole. Iowa Code § 17A.19(8)(f).

## III. *Statute of Limitations and Laches.*

Sahu argues that because the Board did not initiate the complaint against him until seven years after the alleged inaccurate billings, the complaint is barred by the statute of limitations and laches. Since there is no statute of limitations for administrative proceedings, he argues the general statute of limitations applicable to civil cases should apply. *See* Iowa Code § 614.1.

■ Courts usually apply general statutes of limitation to administrative proceedings "in the absence of a specifically applicable provision." 2 Am.Jur.2d *Administrative Law* § 272, at 289 (1994); Noralyn O. Harlow, Annotation, *Applicability of Statute of Limitations or Doctrine of Laches to Proceeding to Revoke or Suspend License to Practice Medicine,* 51 A.L.R.4th 1147, 1151 (1987) (hereinafter Harlow). However, if an administrative proceeding is in the public interest, such as disciplinary proceedings against a medical professional, courts will not apply the general statute of limitations. Harlow, 51 A.L.R.4th at 1151. Therefore, "courts have held without exception that, in the absence of a statute which applies specifically to medical license revocation proceedings, statutes of limitations do not apply to such disciplinary proceedings." *Id.* We conclude the general statute of limitations in Iowa Code section 614.1 does not apply to disciplinary proceedings by the Board.

■ Likewise, courts may apply a similar rationale with respect to the doctrine of laches as a bar to disciplinary proceedings. *Id.* at 1151–52. Although the mere passage of time is insufficient to bar the proceedings, several courts allow the defense of laches if the licensee is prejudiced by an unreasonable delay. *Id.* at 1152. In Iowa, the Board has adopted an administrative rule which provides: "Timely filing is required to ensure the availability of witnesses and to avoid initiation of an investigation under conditions which may have been significantly altered during the period of delay." 653 Iowa Admin.Code 12.50(4) (1991). This regulation incorporates the concept expressed by the laches defense.

We considered the laches defense in a lawyer disciplinary proceeding where we stated:

> Laches is an "equitable doctrine premised on unreasonable delay in asserting a right, which causes disadvantage or prejudice to another." To establish the affirmative defense of laches, prejudice must be shown. Prejudice "cannot be inferred merely from the passage of time." The party asserting the defense carries the burden of establishing the essential elements by clear, convincing, and satisfactory evidence.

*Committee on Professional Ethics & Conduct v. Wunschel,* 461 N.W.2d 840, 846 (Iowa 1990) (citations omitted). *See also State v. Moret,* 504 N.W.2d 452, 453 (Iowa 1993) (laches defense considered in a civil habitual violator proceeding).

Here, the Board properly delayed filing the complaint during the pendency of the federal criminal charges. The disciplinary proceeding was commenced within a reasonable time after the conclusion of the criminal trial. There is no evidence that Sahu was prejudiced by the delay. He has failed to establish a laches defense.

## IV. *Substantial Evidence.*

■ Sahu urges the Board's findings are not supported by substantial evidence. Because Iowa Code chapter 17A delegates fact finding to agencies, "we defer to an agency's fact finding if supported by substantial evidence." *Glowacki v. Board of Medical Examiners,* 516 N.W.2d 881, 884 (Iowa 1994). The question is whether there is substantial evidence to support the finding actu-

ally made, not whether evidence might support a different finding. *Eaves v. Board of Medical Examiners,* 467 N.W.2d 234, 237 (Iowa 1991). The burden of proof is a preponderance of the evidence. *Id.* Evidence is not substantial "when a reasonable mind would find the evidence inadequate to reach" the conclusion reached by the agency. *Fisher,* 510 N.W.2d at 877. We are bound by the agency's factual findings "unless a contrary result is demanded as a matter of law." *Eaves,* 467 N.W.2d at 237.

■ The complaint and statement of charges filed by the executive director of the Board identified sixteen Medicaid claims filed in 1984 by the corporation and verified by Sahu as the basis for disciplinary action. All of these claims relate to services provided to patients at Mercy Hospital, Des Moines, Iowa. Nine were misdated claims for history and physical services, four were claims for services after the patient was discharged from the hospital, and three were claims for services after the patient was transferred to another physician. Sahu was charged with knowingly making misleading, deceptive, untrue, or fraudulent representations in the practice of the profession, a violation of Iowa Code sections 147.55(3) and 148.6(1)(a) (1989); with willful or repeated violations of the statutes or rules or regulations, a violation of Iowa Code sections 147.55(8) and 148.6(1)(i); with committing a dishonest act, a violation of Iowa Code section 148.6(1)(g); and with the violation of specific regulations adopted by the Board.

In response to the charge of improper billing of history and physical services, Sahu argued that the services billed were in fact performed and that his method of billing was similar to that followed by other physicians in Des Moines. He recognized and admitted that the seven incorrect billings for services after the discharge or transfer of the patient were mistakes.

In explanation as to how the mistake occurred, Sahu testified that the billing procedure used when the corporation was established required proposed billings to be submitted to the office manager. Because he and his associate were the only doctors engaged in neonatology practice serving three Des Moines hospitals, one of them was on call every weekend. As a result, billings were delayed. Both Sahu and the office manager relied on Mercy Hospital records, including the census cards and the admission and discharge reports, when preparing Medicaid claim forms. If there was a conflict between the proposed bill and the hospital census report, the claim was prepared on the basis of the dates shown on the census report. Other physicians at that time mistakenly billed for services which were not performed because they relied on Mercy Hospital census records to reflect correctly the date of the patient's admission and discharge.

The Board found Sahu guilty of knowingly making misleading, deceptive, and untrue representations, committing acts contrary to honesty, and willfully and repeatedly submitting claims for misdated history and physical services, for post-discharge services, and for post-transfer services. The Board did not find Sahu guilty of making fraudulent representations.

In its findings of fact the Board found the corporation occasionally relied on Mercy Hospital admission notices and patient listings when preparing claims for submission to Medicaid during the period of the audit, but abandoned its use of the listings after determining the information provided by the hospital was unreliable.

The Board recognized Mercy Hospital does not allow emergency room physicians to admit patients. The emergency room physicians are required to contact a physician and secure the physician's order to admit the patient. The admitting physician is required to perform a history and physical exam of the patient within twenty-four hours of the patient's admission. The Board found other physicians billed the Medicaid program for history and physicals on the date of admission even though the service actually was performed on the following date. The Board also found that Sahu did in fact perform the services but that the date of service was in error on nine patient billings. Although a federal investigator testified "they billed for two history and physicals," the Board refused to make a finding on this issue.

■ The Board concluded that although Sahu did perform the history and physical service for the nine patients, by misdating the date of the service he had knowingly made a false, deceptive, and untrue representation. The certification on the Medicaid claim form provided that information "submitted and which resulted in this claim payment is true, accurate and complete." By misdating the date of service, the Board found Sahu "knowingly" made false, deceptive, and untrue representations. The delegation of the paperwork associated with billing neither relieves the physician of the duty to provide true information nor negates the significance of the physician's certification. The Board found Sahu's conduct was both willful and knowingly made.

We have defined "willful" in a dental license suspension proceeding as meaning an intentional act. *Board of Dental Examiners v. Hufford,* 461 N.W.2d 194, 201 (Iowa 1990). *See also Committee of Professional Ethics & Conduct v. Crawford,* 351 N.W.2d 530, 532 (Iowa 1984) (attorney discipline case where failure to file tax return was held intentional and therefore willful).

■ To act "knowingly" has been defined to mean that a person acted voluntarily and intentionally, and not because of mistake or accident or other innocent reason. *United States v. Enochs,* 857 F.2d 491, 493 (8th Cir.1988). Knowledge is defined in Iowa's uniform instructions to mean the defendant "had a conscious awareness" of the element requiring knowledge. 1 Iowa Criminal Jury Instructions 200.3 (1988). *See also* 1 Iowa Criminal Jury Instructions 910.4 and Iowa Code § 728.1(2) (knowingly "means being aware of the character of the matter"). An honest mistake or understandable mistake is not a dishonest act. Honesty requires that a person make representations in good faith and without a conscious knowledge of the falsity of the representations.

In our review of the record we find there is substantial evidence that the misdated billing for histories and physicals was a common practice for billing Medicaid patients in Mercy Hospital in 1984 and that Sahu actually provided to the Medicaid patients the services he claimed. There is substantial evidence that the seven incorrect post-discharge and transfer billings were mistakes. There is no substantial evidence that Sahu knowingly or willfully made misleading, deceptive, or untrue representations by submitting Medicaid claims containing inaccurate dates of service or mistaken claims for services. Nor is there substantial evidence that Sahu committed a dishonest act or violated regulations adopted by the Board based upon the statutory violations.

## V. *Disposition.*

We conclude a reasonable person would find the facts and circumstances presented in this proceeding to be inadequate to reach the conclusions reached by the Board. We therefore reverse the decision of the district court and remand to the Board for entry of an order dismissing the complaint. Because of this ruling we need not address the constitutional challenges of double jeopardy and due process raised by Sahu in his appeal.

**REVERSED AND REMANDED.**

All justices concur except HARRIS, J., who dissents.