Vasu **ARORA,** Appellee,

v.

**IOWA BOARD OF MEDICAL EXAMINERS,** Appellant.

No. 96–279.

Supreme Court of Iowa.

May 21, 1997.

Rehearing Denied June 16, 1997.

Thomas J. Miller, Attorney General, and Linny Emrich, Theresa O'Connell Weeg, and Heather L. Adams, Assistant Attorneys General, for appellant.

Michael J. Gau of Kane, Norby & Reddick, P.C., Dubuque; for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

LARSON, Justice.

The Polk County District Court reversed a decision of the Iowa Board of Medical Examiners, which had suspended the medical license of the respondent, Vasu Arora, for substandard care of patients. The district court concluded that the board's decision lacked substantial evidence and was unreasonable and arbitrary. *See* Iowa Code §§ 17A.19(8)(f), (g) (1991). The court also concluded that the board committed an error of law by refusing the respondent an opportunity to personally present his argument to the board as provided by Iowa Code section 148.7(6). The court ordered the board to reinstate respondent's license.

We conclude that the board's decision was supported by substantial evidence and that its finding of substandard care by the respondent was not arbitrary or capricious. For that reason and because the board erroneously denied Arora an opportunity to personally address the board as required by Iowa Code section 148.7(6), we reverse the judgment of the district court and remand for further proceedings.

## I. *Scope of Review.*

We review a contested administrative proceeding for errors of law. Iowa Code § 17A.19(8); *Sahu v. Board of Med. Exam'rs,* 537 N.W.2d 674, 676 (Iowa 1995). Our review under Iowa Code section 17A.20 is limited to determining whether the district court correctly applied the law in exercising its judicial review function under Iowa Code section 17A.19(8). *Glowacki v. Board of Med. Exam'rs,* 516 N.W.2d 881, 884 (Iowa 1994).

> Because Iowa Code chapter 17A delegates fact-finding to agencies, "we defer to an agency's fact-finding if supported by substantial evidence." *Glowacki v. Board of Medical Examiners,* 516 N.W.2d 881, 884 (Iowa 1994). The question is whether there is substantial evidence to support the finding actually made, not whether evidence might support a different finding. *Eaves v. Board of Medical Examiners,* 467 N.W.2d 234, 237 (Iowa 1991). The burden of proof is a preponderance of the evidence. *Id.* Evidence is not substantial "when a reasonable mind would find the evidence inadequate to reach" the conclusion reached by the agency. *Fisher [v. Board of Optometry Exam'rs ],* 510 N.W.2d [873,] 877 [ (Iowa 1994) ]. We are bound by the agency's factual findings "unless a contrary result is demanded as a matter of law." *Eaves,* 467 N.W.2d at 237.

*Sahu,* 537 N.W.2d at 676–77.

## II. *The Substantial Evidence Issue.*

Arora was charged with rendering substandard care in twelve cases, and the board found that five of the twelve charges were proven. The district court reversed, finding that there was no substantial evidence to support any of the charges. We will refer to the cases, as did the board, as Patients 1, 2, 3, 4, and 8.

**A.** *Patient 1.* Patient 1 was a ninety-four-year-old woman who was admitted to a hospital with a diagnosis of vascular occlusion. The respondent's treatment included intravenous Heparin (a blood thinner) and intramuscular injections of Demerol for pain. In the days following her admission, the patient began to bleed excessively, and her hemoglobin level dropped. She also developed multiple hematomas at the sites of her intramuscular injections.

An expert testified that the respondent's care was substandard because, despite the patient's increased bleeding, hematomas, and a drop in hemoglobin, Arora ordered an increase in Heparin. The witness stated:

> Once bleeding was established to being caused by the Heparin—that is, the development of a large hematoma, multiple hematomas, as noted by both the doctor and the nursing staff—the Heparin should have been stopped or significantly decreased. Instead, Dr. Arora continued to increase the dose of Heparin.... The patient continued to bleed and continued to need further blood transfusions.

The board agreed that this amounted to substandard care.

**B.** *Patient 2.* Patient 2 was a ninety-three-year-old man admitted with auricular fibrillation and an irregularly rapid heartbeat. The board found that Arora provided substandard care by failing to perform adequate initial diagnostic testing and laboratory monitoring. Specifically, it criticized him for treating the patient's symptoms without determining or addressing their cause. He failed to order a chest x-ray, which could aid in the diagnosis of such contributing conditions as congestive heart failure, pulmonary edema, or enlargement of the heart. No laboratory tests were performed to rule out a recent myocardial infarction. When the patient's complaints of dizziness subsided, he was discharged without further diagnosis or treatment. The board concluded that this, also, amounted to substandard care.

**C.** *Patient 3.* This patient was an eighty-year-old woman with a medical history of palpitations, diabetes, and hypertension. The board did not make extended findings with respect to this patient, but it concluded that the respondent failed to perform a complete diagnostic workup and failed to monitor the effectiveness of therapy by utilizing chest x-rays and serial EKGs as diagnostic tools. The respondent's reliance on a single EKG was not sufficient, according to the board, in light of the patient's serious condition and

the more effective diagnostic procedures available.

**D.** *Patient 4.* This patient was a seventy-eight-year-old woman admitted with cardiac palpitations and in a poorly nourished and emaciated condition. The respondent administered Lasix, which the board concluded exacerbated the patient's dehydration. No diagnostic blood tests were ordered to determine the degree of dehydration and no effort was made to replenish the patient's body fluids. An expert testified:

> This patient at the time was severely hypotensive, likely to be severely dehydrated, and Lasix would actually make the dehydration and the blood pressure response worse. And, so, yes this drug probably contributed to the patient's demise.... Lasix is a powerful loop diuretic. It creates in the kidney a transfer of fluids ... into the collecting system, and it causes a diuresis. Upon doing that, the blood volume will decrease in a patient that's probably already having very poor volume status.

The board found this to constitute substandard care.

**E.** *Patient 8.* Patient 8 was a sixty-four-year-old diabetic admitted from a nursing home because his blood sugar was fluctuating widely. The respondent's admitting diagnosis included uncontrolled diabetes, mild dehydration, and peripheral vascular insufficiency. The patient was discharged back to the nursing home without achieving adequate control of his diabetes during his hospital stay. The board concluded that discharging the patient from the hospital under these circumstances amounted to substandard care based in part on this testimony by the expert:

> I don't see where the patient really changed any clinically and to know what was gained by being in the hospital as compared to being in the nursing home and having the same types of sugars drawn and analyzed, but nonetheless, if sugars from the lab results really didn't change very much, and there was only one blood sugar in all those blood tests that was really acceptable, and that was the very last one. Is that a fluke, or if that is

going to be the new pattern for this patient is unknown.

We conclude that substantial evidence supported the board's findings as to all five patients and therefore reverse that part of the district court's judgment concluding otherwise.

### III. *The Alleged Unreasonableness and Arbitrariness.*

■ The district court found the board's actions to be unreasonable and arbitrary under Iowa Code section 17A.19(8)(g). "Unreasonableness" is defined as action in the face of evidence as to which there is no room for difference of opinion among reasonable minds, or action not based on substantial evidence. *Stephenson v. Furnas Elec. Co.,* 522 N.W.2d 828, 831 (Iowa 1994). An agency's action is "arbitrary" or "capricious" when it is taken without regard to the law or facts of the case. *Soo Line R.R. v. Iowa Dep't of Transp.,* 521 N.W.2d 685, 688–89 (Iowa 1994).

■ The district court found that the board acted unreasonably and arbitrarily by placing responsibility for the alleged substandard care on Dr. Arora in view of the fact that other doctors were either directly involved in the care of patients or had consulted with Dr. Arora concerning their care. (The respondent's additional theory, that it was unreasonable and arbitrary for the board to bring charges five years after the investigation began, was not raised before the board and has therefore been waived. *See Soo Line R.R.,* 521 N.W.2d at 688).

Arora's argument that some of the blame should have been shifted to other doctors focuses primarily on Patient 1. As discussed earlier, there was substantial evidence that prescribing Heparin for this patient was improper. Arora points out that another doctor, a Dr. Rhodes, also recommended an increase in the dosage of Heparin. On one occasion, Dr. Rhodes increased the Heparin dosage to 1200 cc per hour. However, the next day Arora again increased the dosage to 1400 cc and then increased it to 1800 cc per hour.

Arora complains generally that he was a "scapegoat" for all of the doctors involved in the treatment of these five patients. However, it is undisputed that the patients were primarily Arora's patients, and almost all of their medical care was provided by Arora. Even if other doctors participated in the substandard care of the patients, it was not unreasonable for the board to find that Arora's own care was substandard, and that is the issue here.

We disagree with the district court's finding on this issue and hold that the evidence did not establish that the board acted unreasonably or arbitrarily.

## IV. *The Licensee's Right to Introduce Additional Evidence and Present Oral Argument at the Appeal Hearing.*

The complaint against the respondent was filed by the executive director of the Iowa Board of Medical Examiners pursuant to Iowa Code chapter 148 and the rules of the Board of Medical Examiners. The case was heard by a panel of the Board of Medical Examiners (the panel hearing), and a proposed decision was issued by the panel. The respondent appealed that decision, and the case was heard by a quorum of the board (the appeal hearing). The respondent appeared personally and with his attorney at both hearings. A transcript of the evidence from the panel hearing was prepared for use on the appeal.

After the panel hearing and before his appeal to the full board, the respondent made a twofold request: to introduce evidence to supplement the record made at the panel hearing and to orally "present [his] position and argument to the board" at the appeal hearing as provided by Iowa Code section 148.7(6). The board denied both requests.

■ **A.** We reject Arora's argument that he should be allowed to supplement the record after the panel hearing. The only evidence that may be considered on the appeal is that which was in the record before the panel. Iowa Admin. Code r. 653–12.50(29)(e) ("The record on appeal shall be the entire record made before the hearing panel or administrative hearing officer."). While additional evidence may be introduced in a petition for rehearing *following* the board's final decision, Iowa Admin. Code r. 653–12.50(30), there is no provision under either Iowa Code section 148.7 or the board's administrative rules that would permit this licensee to supplement the record after the panel hearing and before the hearing on appeal.

■ **B.** The second facet of Arora's argument concerns the board's denial of his request to be heard orally at the appeal hearing. Iowa Code section 148.7(6) provides:

Unless the [initial] hearing is before the entire board, a transcript of the proceeding, together with exhibits presented, shall be considered by the entire board at the earliest practicable time. *The licensee and the licensee's attorney shall have the opportunity to appear personally to present the licensee's position and arguments to the board.* The board shall determine the charge or charges upon the merits on the basis of the evidence in the record before it.

(Emphasis added.)

On judicial review, the district court held that denying Arora an opportunity to speak to the full board violated section 148.7(6). However, it refused to remand on this ground because "[a] remand in this case would be an exercise in futility since the board heard arguments of counsel and has issued its decision."

We agree with Arora that the language of section 148.7(6) expressly requires that a licensee be allowed to participate in the appeal hearing personally as well as through an attorney. Because the board failed to comply with this requirement, we reverse and remand for a new appeal hearing before the board. The board shall decide the appeal on the record made before the panel with the right in Arora to personally present his statements of position and argument as required by section 148.7(6).

Accordingly, we reverse and remand to the district court with instructions to enter an order reversing the decision of the board and

remanding the case to the board for a hearing in accordance with this opinion.

**REVERSED AND REMANDED WITH DIRECTIONS.**