**RINGLAND JOHNSON, INC., Appellee,**

v.

**Employment Appeal Board, Iowa Division of Job Service, Respondents,**

**Brian J. HUNECKE, Appellant.**

No. 96–1888.

Supreme Court of Iowa.

Oct. 21, 1998.

Joseph H. Laverty, Davenport, for appellant.

A. John Frey, Jr. of Frey, Haufe & Current, P.L.C., Clinton, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN,* JJ.

LARSON, Justice.

Ringland Johnson, Inc. fired Brian J. Hunecke for alleged theft of company property, and it later objected to payment of unemployment benefits to Hunecke because of his alleged misconduct. *See* Iowa Code § 96.5(2)(a) (1995). The Employment Appeal Board awarded benefits, but the district court reversed for lack of substantial supporting evidence. The court of appeals reversed the district court, allowing Hunecke to receive benefits, and the employer applied for further review. We vacate the decision of the court of appeals and affirm the judgment of the district court.

## I. *Facts and Prior Proceedings.*

Ringland Johnson, Inc. hired Hunecke as the supervisor of its Clinton, Iowa cabinet shop. Hunecke's duties included hiring and firing employees, ordering material, estimat-

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1997).

ing projects, assigning personnel, and coordinating deliveries. He occasionally used his own pickup for company business, and he was reimbursed for it. On April 1, 1995, after business hours, Larry Johnson, chairman of Ringland Johnson, watched from a distance as Hunecke took cabinet shop material and placed it into five "staging piles," in apparent preparation for loading it onto his pickup. (Johnson was watching Hunecke because other employees had alerted Johnson to the fact that Hunecke was stealing company property.) Johnson says Hunecke was in the process of stealing the material; Hunecke says he was only rearranging it. At any rate, when Johnson confronted Hunecke, Hunecke stopped piling the material and began to unload the material he had just put on his pickup. Johnson fired him.

Hunecke filed a claim for unemployment benefits, and Ringland Johnson resisted. A Job Service claims deputy denied benefits. On appeal, a Job Service administrative law judge (ALJ) reversed the denial of benefits, finding "no disqualifiable reason" for Hunecke's termination. The employment appeal board affirmed the ALJ's decision. On Ringland Johnson's petition for judicial review, the district court denied benefits, concluding that the final agency decision was unsupported by substantial evidence. Hunecke appealed. The court of appeals reversed on the ground the district court did not accord sufficient weight to the ALJ's findings of fact. We granted further review.

## II. *The Law.*

An individual shall be disqualified for benefits:

2. *Discharge for misconduct.* If the division of job service finds that the individual has been discharged for misconduct in connection with the individual's employment:

a. The individual shall be disqualified for benefits until the individual has worked in and has been paid wages for insured work equal to ten times the individual's weekly benefit amount, provided the individual is otherwise eligible.

Iowa Code § 96.5(2)(a) (1995).

The Iowa Administrative Code defines misconduct as follows:

Misconduct is defined as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

Iowa Admin. Code r. 345–4.32(1) (1986) (currently Iowa Admin. Code r. 871–24.32(1)(a) (1996)).

## III. *Judicial Review Principles.*

■ On judicial review of agency action, a court is "authorized to grant relief only if the agency's action is affected by error of law, unsupported by substantial evidence in the record, or characterized by abuse of discretion." *George A. Hormel & Co. v. Jordan,* 569 N.W.2d 148, 151 (Iowa 1997).

■ A termination for misconduct will not justify a denial of unemployment compensation if the termination is based solely on past acts. Iowa Admin. Code r. 345–4.32(8) (1986) (currently Iowa Admin. Code r. 871–24.32(8) (1996)). Past acts, however, can be used to determine the magnitude of the current act. *Id.; see also Flesher v. Iowa Dep't of Job Serv.,* 372 N.W.2d 230, 234 (Iowa 1985); *Budding v. Iowa Dep't of Job Serv.,* 337 N.W.2d 219, 223 (Iowa App.1983) (describing the "past acts" provision as the "last straw doctrine," in which even a relatively minor

infraction, viewed with prior infractions, may constitute misconduct).

## IV. *Sufficiency of the Evidence.*

█ Substantial evidence means evidence that a reasonable person would accept as adequate to reach the same finding. *City of Hampton v. Iowa Civil Rights Comm'n,* 554 N.W.2d 532, 536 (Iowa 1996). Evidence is not insubstantial merely because of the possibility of drawing two different conclusions from it. So, as we have often said, the ultimate question is not whether the evidence would support a different finding but whether it supports the finding actually made. *See id.* (citing *Gaskey v. Iowa Dep't of Transp.,* 537 N.W.2d 695, 698 (Iowa 1995)). Evidence is not substantial if a reasonable mind would find the evidence inadequate to reach the same conclusion as the agency. *Sahu v. Board of Med. Exam'rs,* 537 N.W.2d 674, 677 (Iowa 1995).

█ The ALJ focused primarily on the events of April 1, 1995, concluding that Hunecke had not removed the property from the company premises, so his act was not theft. The employer argues that this finding was unsupported by the record. The employer complains the ALJ failed to give appropriate weight to the evidence of past acts by Hunecke as testified to by Johnson and several of Hunecke's coemployees. The employer also argues that the ALJ made a mistake of law because actual removal of the property is not required to constitute theft. *See* Iowa Code § 714.1 (theft committed by taking control of another's property with intent to deprive owner of it).

Evidence of past acts lends additional weight to the employer's claim of misconduct here. For example, Hunecke had previously directed Ringland Johnson employees to make twelve to fourteen pieces of Adirondack furniture from cypress lumber taken from company stock. Hunecke loaded the furniture on his truck, and company employees later saw identical furniture at Hunecke's home. Hunecke claimed he had paid for the furniture taken from the company inventory, but company records belie that claim. Ringland Johnson employees also had made a birdseye maple dresser at Hunecke's request, from company material. Hunecke loaded it onto his truck and hauled it away. Company records show no invoice or payment for the material or the labor. Evidence also showed that Hunecke had taken a pair of power grips, valued at approximately $265, and put his initials on them. They disappeared.

Hunecke hauled three to five pickup loads of material from the shop. He claimed he had merely taken scrap material, with his employer's consent, to donate to a union apprenticeship program. The testimony of other employees, however, was that it was not scrap; it was valuable material. Further, Hunecke was only able to show a receipt from the apprenticeship program for one load of material. (Even that receipt is suspect because it was dated after Hunecke was confronted by Johnson for his apparent theft on April 1.) Employees of Ringland Johnson built a white oak glider, which, they testified, ended up at Hunecke's house. Hunecke denied this, but again failed to show evidence that he purchased the material as he claimed.

The ALJ concluded that no misconduct was shown because (1) no one actually saw Hunecke take company property (a finding of doubtful validity in view of testimony of employees who had seen him load material and furniture on his pickup); and (2) as to the April 1 incident, Hunecke could not be guilty of theft or attempted theft because he did not actually remove the "staged" material from the company premises (a conclusion without legal support).

█ On appellate review of an agency ruling, a court must consider all evidence, including the evidence that weighs against the agency determination as well as that supporting it. *Iowa Health Sys. Agency, Inc. v. Wade,* 327 N.W.2d 732, 733 (Iowa 1982). On our review of the entire record, we conclude that the direct and circumstantial evidence of theft is so compelling that a reasonable mind would find the evidence inadequate to reach the same conclusion as the agency. *See Sahu,* 537 N.W.2d at 677. We vacate the court of appeals decision and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.**