Dennis MILLER, Appellant,

v.

The BOARD OF MEDICAL EX-
AMINERS OF the STATE
OF IOWA, Appellee.

No. 97–2118.

Supreme Court of Iowa.

April 26, 2000.

Michael M. Sellers, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Theresa O'Connell Weeg, Assistant Attorney General, for appellee State.

NEUMAN, Justice.

The Iowa State Board of Medical Examiners (board) charged the respondent, Dennis G. Miller, an osteopathic physician practicing in Wellman, Iowa, with substandard treatment of patients under his care. The board's case centered on Miller's prescription practices. Following a contested case hearing, the board imposed a two-year probation coupled with compulsory continuing education and restrictions on Miller's ability to prescribe controlled substances.

Miller challenged the board's decision by petitioning for judicial review in accordance with Iowa Code section 17A.19 (1997). The district court affirmed the board. On Miller's appeal, we find no error warranting reversal and, therefore, affirm the judgment of the district court.

## I. Background.

The board's investigation was prompted by two calls received in 1990 and 1991, expressing concern about Miller's prescription practices. One call came from a licensed pharmacist, the other from a Pharmacy Board investigator. A preliminary investigation led the board's disciplinary committee to recommend that a selection of Miller's patient files be subjected to peer review.

A two-member peer review committee (composed of two internal medicine specialists, one of whom was also certified in geriatrics) examined the medical records for twelve of Miller's patients. Following the examination, the committee expressed four areas of concern: the amount and frequency of scheduled drug prescriptions, antibiotic usage, open prescriptions and instructions for tranquilizers, and availability of call coverage.

During the disciplinary hearings that followed, a three-member panel of the board heard directly from the physician who prepared the peer review committee's report. The panel also had before it substantial documentary evidence in the form of pharmacy records covering the patients whose medical records had been reviewed. Also called to testify were the director of nursing at a nursing home serviced by Miller, as well as the facility's owner. For his part, Miller elicited the opinion of an independent osteopathic physician who had examined the same records. That physician, however, corroborated most of the findings of substandard practice highlighted by the State's witnesses. Only Miller himself (and, to some degree, the nursing home owner) attempted to justify the prescription practices revealed by the record.

Based on the testimony and exhibits sketched above, the panel concluded that Miller deviated from the applicable standard of care from early 1989 until at least 1993. Its written findings, adopted in full by the entire board upon Miller's appeal, summarized the respondent's deficiencies as follows, stating that he

(a) inadequately evaluated patients on an individual basis before prescribing anti-depressant and anxiolytic medications, failed to adequately document the reasons for the medications, and failed to adequately follow up on the patient's use of the medications to determine if therapeutic effect had been achieved and if the medications could be decreased or discontinued. In addition, the Respondent inappropriately prescribed a dosage range in some cases, allowing nursing personnel to determine the exact dosage to be administered.

(b) prescribed antibiotics for prolonged periods as treatment for urinary tract infections without determining that the infections had recurred or documenting the recurrence of the infections. In addition, the Respondent inappropriately prescribed different antibiotics to the same patient, at the same time, allowing the patient to choose which antibiotic was most effective.

(c) prescribed narcotic and anxiolytics medications to patients with non-terminal chronic pain without adequately pursuing and documenting use of available alternatives to narcotics and controlled medications. In addition, the Respondent prescribed inappropriately large amounts of narcotics for inappropriately long periods of time to patients who were diagnosed with substance abuse or dependence. The Respondent's records indicate that refills were freely provided by telephone, even when patients claimed their medications had been lost or stolen. The Respondent often failed to refer these patients to pain clinics, psychiatrists or psychologists, or to other specialists. In some cases, he ignored the recommendations of specialists to reduce or discontinue use of narcotics and anxiolytics.

The panel found insufficient proof to support a claim that Miller deviated from the applicable standard of care with respect to prescribing for himself and his

family. It likewise found the record lacking in proof with regard to any impropriety in Miller's practice of providing alternative physician coverage when unavailable to his patients.

Based on the foregoing findings, the board placed Miller on probation for two years subject to the condition that he secure sixty hours of continuing education in the treatment of urinary tract infections, medical treatment of the elderly, and record keeping, as well as an approved course in management of chronic pain patients. He was directed, during the period of his probation, to maintain thorough and written treatment plans for all patients for whom he prescribed controlled drugs to treat chronic pain, and to make those records available at all times for board inspection. Finally, Miller was directed to cease telephone refills for prescriptions of controlled medications.

On Miller's petition for judicial review, the district court affirmed the board's ruling in its entirety. This appeal by Miller followed. Further facts will be detailed as they pertain to the issues under review.

## II. Scope of Review.

■■■ Our inquiry on appeal from judicial review of agency action is limited to whether the district court correctly applied the law. *Arora v. Board of Med. Exam'rs,* 564 N.W.2d 4, 6 (Iowa 1997). We are bound, as is the trial court, by the agency's factual findings "unless a contrary result is demanded as a matter of law." *Eaves v. Board of Med. Exam'rs,* 467 N.W.2d 234, 237 (Iowa 1991). Constitutional claims are reviewed by this court de novo. *Rosen v. Board of Med. Exam'rs,* 539 N.W.2d 345, 348 (Iowa 1995).

## III. Issues on Appeal.

Although Miller differs with the judgment reached by the board concerning his

prescription practices, his appeal only indirectly challenges the board's proof. He insists, by way of explanation for the appeal, that probation is a "life sentence" because insurers will now "drop" him from their lists of approved physicians. He seeks reversal, rather than rehearing, mindful that his probationary term will have been completed by the time this decision is filed.[1] He claims to seek redress for alleged statutory and constitutional violations, not only for himself, but on behalf of all physicians who might face such disciplinary procedures in the future.

Miller poses four principal contentions for our consideration: (1) The composition of the disciplinary panel, which included only two licensed professionals, violated the equal protection clauses of the Iowa and United States Constitutions; (2) the board's policy of destroying original investigative materials upon filing the complaint requires reversal as a matter of law; (3) the peer review proceedings employed by the board violated due process; and (4) the doctrine of laches, as well as the lack of patient complaints, deprives the board of jurisdiction to sanction him. We shall consider the arguments in turn.

■■ *A. Composition of disciplinary panel.* Iowa Code chapter 272C generally governs the regulation of professional and occupational licensees with respect to continuing education and discipline. Section 272C.6 provides that disciplinary hearings shall be conducted by the licensing board "or by a panel of not less than three board members who are licensed in the profession." An express exception to this provision, however, is found in Iowa Code section 147.103A(6). That statute, pertinent to physicians and surgeons, provides that disciplinary matters "shall be heard by the board, or by a panel of not less than three board members, *at least two of which are*

---

1. A physician is not ordinarily entitled to a stay pending appeal. *See* Iowa Code § 148.7(9); *Glowacki v. Board of Med. Exam'rs,* 501 N.W.2d 539, 542 (Iowa 1993)

(sustaining applied constitutional challenge to § 148.7(9) by physician whose professional competency was not at issue).

*licensed in the profession....*" Iowa Code § 147.103A(6) (emphasis added). Miller challenges the constitutionality of section 147.103A(6), claiming that the panel which heard his case—composed of two licensed physicians and one lay board member—violated his right to equal protection of the laws. *See* U.S. Const. amend. XIV; Iowa Const. art. I, § 6.

At the outset Miller concedes that the statutory scheme at issue involves neither a suspect classification nor a fundamental right. Thus he agrees that no more exacting standard than the rational basis test applies. *See Ruden v. Parker*, 462 N.W.2d 674, 676 (Iowa 1990). Under that familiar analysis, the statute enjoys a presumption of constitutionality which can only be overcome by proof that the law is patently arbitrary and bears no rational relationship to a legitimate governmental interest. *Glowacki v. Board of Med. Exam'rs*, 501 N.W.2d 539, 541 (Iowa 1993). Miller has not met that proof burden here.

The board offered two reasonable explanations for the legislative rationale underlying section 147.103A(6), both of which were accepted by the district court. First, the same bill which enacted section 147.103A(6) also amended section 147.14(2) by adding another public member to the board. *See* 1992 Iowa Acts ch. 1183, § 2. Thus the bill reflects a legislative intent to increase lay participation on the medical board, a goal consistent with the significant public health and safety issues involved in the regulation of physician practice.

Second, reducing the number of licensed physicians required to sit on each panel facilitates the prompt hearing of disciplinary matters. Given the number and frequency of these hearings, the statute strives to ensure that physicians are not deterred from serving on the board by an overly burdensome hearing schedule.

Contrary to the argument advanced by Miller, we are not convinced that reducing physician participation on disciplinary panels necessarily translates to reduced understanding of the technical aspects of the complaints. The majority of each panel is still composed of the physician's peers. Expert testimony received on disputed issues, combined with the opportunity for cross examination by the respondent, minimizes any substantial risk that technical claims or defenses will be misunderstood. Moreover, the imposition of discipline still requires the majority vote of the full board, a tribunal comprised of seven licensed physicians and three public members. *See* Iowa Code § 272C.6(5).

This court has previously held, in the context of the lower evidentiary standard applicable to physician disciplinary actions, that "[t]he State is free to deal with different professions differently without violating the equal protection guarantees established under the federal and state constitutions." *Eaves*, 467 N.W.2d at 237. That same observation holds true here. Medical board decisions involve important issues of public health and safety. Section 147.103A(6) advances the State's interest in avoiding unnecessary delay in decision making while satisfying the legislative commitment to public oversight. The statute easily meets the rational basis standard, thereby defeating Miller's equal protection claim. The district court was correct in so ruling.

B. *Destruction of investigative files.* Miller's second appellate challenge gives us more pause. In sworn testimony before the hearing panel, the board's investigator revealed a board policy that calls for the destruction of the investigator's "field files" immediately upon the filing of a formal complaint against a respondent. In other words, any handwritten notes or memoranda relied on by the investigator in the preparation of the report, but not included as an attachment, are destroyed. As a result these materials are not available for examination through discovery. Miller contends the board's policy contravenes Iowa Code section 272C.6(4) as interpreted by this court in *Doe v.*

*Board of Physical Therapy & Occupational Therapy Exam'rs,* 320 N.W.2d 557 (Iowa 1982). He also argues the policy's implementation in his case deprived him of a fair hearing.

The State counters that Miller reads section 272C.6(4) and *Doe* too broadly. All pertinent evidence, it maintains, was incorporated into the investigative report submitted to the board and made available for examination by Miller. Miller did not request production of the field notes in discovery. Nor did he deny the prescription regimens revealed by the voluminous documentary evidence admitted at trial. He merely took issue with the experts' characterization of the treatments as substandard. Thus the board insists that no prejudice has been shown by its failure to preserve the field files for Miller's examination.

The district court agreed that Miller suffered no prejudice by the destruction of the investigators' field notes in this case. It hastened to add, however, that it was "deeply disturbed" by revelation of the board's policy. So are we. The deliberate destruction of investigative files casts doubt on the integrity of the entire disciplinary process. The board provides virtually no explanation for its practice. It merely claims that everything material to the complaint is incorporated in the complaint. By its conduct, however, the board has necessarily shifted the inquiry from what it *provided* to the respondent, to speculation about what it *withheld.*

The board insists, and we have no reason to doubt, that its "practice upon filing of formal charges [is] to provide a copy of the investigative file to the physician upon request." It believes this practice comports with section 272C.6(4). That statute provides, in pertinent part:

> [A]ll complaint files, investigation files, other investigation reports, and other investigative information in the possession of a licensing board or peer review committee acting under the authority of a licensing board or its employees or agents which relates to licensee discipline are privileged and confidential, and are not subject to discovery, subpoena, or other means of legal compulsion for their release to a person other than the licensee and the boards, their employees and agents involved in licensee discipline, and are not admissible in evidence in a judicial or administrative proceeding other than the proceeding involving licensee discipline.

Iowa Code § 272C.6(4). In *Doe,* this court interpreted section 242C.6(4) to mean that disclosure of materials contained in a complaint file "is barred unless or until a disciplinary proceeding against the licensee is initiated." *Doe,* 320 N.W.2d at 561. Thus, in the absence of formal proceedings against the licensee, we upheld the licensing board's decision to withhold a complainant's identity. *Id.* Implicit in our decision, however, was the recognition that the type of information protected from public scrutiny by section 272C.6(4) is just the kind of material a respondent in a formal complaint proceeding might want to examine. *See id.* at 560. The statute calls for disclosure of "other investigative information in the possession of a licensing board ... or [its] agents" relating to licensee discipline. Material in the hands of the board's investigator plainly fits that description. We thus hold that the board's policy of destroying field files upon the filing of a formal complaint violates Iowa Code section 272C.6(4).

■ We are nevertheless convinced, as was the district court, that the board's failure to comply with section 272C.6(4) does not entitle Miller to relief. He has failed to prove that his substantial rights have been prejudiced by the board's action. *See* Iowa Code § 17A.19(8). As already noted, the board's case consisted primarily of extensive documentary proof and persuasive expert testimony largely unrefuted by the respondent. While the board's policy could prejudice substantial rights of another respondent, it has not

done so here. No error warranting reversal appears.

■ C. *Peer review process.* Miller next takes issue with the peer review process utilized in this case. He claims he was disadvantaged by the peer review panel's failure to seek his input before reporting to the board, and this failure denied him due process. The board responds that administrative rules implementing the statutory disciplinary process authorized the input Miller seeks, but he never requested it. It was upon this basis that the district court rested its ruling.

The governing administrative rule at issue is Iowa Administrative Code rule 653—12.50(5). The rule states:

*Investigation of allegations.* In order to determine if probable cause exists for a hearing on the complaint, the executive director or someone designated by the executive director shall cause an investigation to be made into the allegations of the complaint or the executive director may refer the complaint to a registered peer review committee for investigation, review and report to the board. In this regard, the person complained of *may* be furnished with information concerning the complaint and given the opportunity to informally present a position or defense respecting the allegations of the complaint prior to the commencement of a contested case. This position or defense may be submitted in writing but a personal conference with the executive director, investigator *or* peer review committee may be had as a matter of right *upon request.*

Iowa Admin. Code r. 653—12.50(5) (1990) (emphasis added). Miller contends that, contrary to the dictates of the rule, the board maintains a firm policy of refusing to furnish any information to a respondent or counsel regarding whether a peer review report is being sought or has been obtained. To support his claim he cites Iowa Administrative Code rule 653—1.12(2). That rule embodies, in general, the policy regarding nondisclosure of investigative files discussed in the previous section of this opinion. The rule states:

All information in licensee complaint and investigation files maintained by the agency for purpose of licensee discipline are required to be withheld from the subject prior to the filing of formal charges and the notice of hearing in a licensee disciplinary proceeding.

*Id.* r. 653—1.12(2). He points to nowhere in this record where he made any attempt to secure the board's or the executive director's compliance with rule 653—12.50(5).

The record plainly reveals that Miller was aware of the board's investigation because he was interviewed by the board's investigator and furnished the medical records requested of him. Through that interview, the district court reasoned, Miller had an opportunity to present his position to the board and cast the investigator's examination of his medical records in the most favorable light. We agree. The record further supports the court's finding that Miller made no request to meet personally with the peer review committee. Thus he has no one to blame but himself for the alleged failure of the process to work to his advantage.

■ As for Miller's additional claim that rule 653—12.50(5) entitles licensees to exercise all the options it contains (i.e., to confer with the executive director, investigator or peer review committee), the district court correctly observed that the rule's use of the disjunctive "or" directly contradicts Miller's argument. *See Casteel v. Iowa Dep't of Transp.,* 395 N.W.2d 896, 898 (Iowa 1986) (word "or" is disjunctive, not conjunctive). There is merit in Miller's claim that "[e]nabling physicians, as professional people, to have a reasonable and adequate opportunity to defend themselves does nothing more than enable the Board and its panels to do a better, more responsible, and more credible job of imposing discipline where it is deserved." But we find no support in this record for

his claim of "anti-physician" bias by the executive director or deliberate restriction of his right to be heard. The assignment of error is without merit.

D. *Laches and other miscellaneous complaints.* Finally, Miller challenges the authority of the board to proceed against him in this matter, given the passage of time and absence of patient complaints against him. The district court found no legal or factual support for these contentions. Our review of the record leads us to the same conclusion.

■ Miller's laches defense rests on his claim that much of the documentation relied upon was six to seven years old by the time it was considered by the hearing panel. The board contests this characterization of the record. It points out that the complaints against Miller were first received in 1990 and 1991, and most of the patient files relied upon for its decision involved Miller's treatment of patients through mid–1992. When the investigation and peer review inquiries are factored in, roughly four and one-half years elapsed between the first complaint and the formal filing of charges against Miller.

The board concedes that devoting three years to investigating this matter was perhaps longer than the "ideal" but was not unreasonable. We are inclined to agree. Our view is fortified by a decision relied upon by Miller, *Sahu v. Board of Medical Examiners,* 537 N.W.2d 674 (Iowa 1995).

■ In *Sahu,* this court joined those jurisdictions willing to recognize a laches defense in a professional disciplinary action, but applying it to bar the action only if (1) the delay is unreasonable, and (2) prejudice to the licensee is established. *Sahu,* 537 N.W.2d at 676; *see also Committee on Prof'l Ethics & Conduct v. Wunschel,* 461 N.W.2d 840, 846 (Iowa 1990) (requiring convincing proof of unreasonable delay and prejudice to establish laches defense in lawyer disciplinary action). "[M]ere passage of time is insufficient to bar the proceedings." *Sahu,* 537 N.W.2d

at 676. In *Sahu,* a delay of seven years (resulting from federal prosecution of the respondent-physician on criminal charges) was found insufficient to sustain a laches defense in the absence of proof of prejudice. *Id.* So also here, we do not believe the time spent on investigation and peer review was unreasonable, given the number of patients, extent of medical and pharmacy records, and variety of quality of care issues involved.

Nor has Miller demonstrated that he was prejudiced by the time taken to resolve the inquiry. The case rested on review of medical treatment documented in patients' records. Unavailability of fact witnesses or significant alteration of conditions were therefore not relevant concerns. *Cf.* Iowa Admin. Code r. 653—12.50(4) ("Timely filing [of the initial complaint] is required to ensure the availability of witnesses and to avoid initiation of an investigation under conditions which may have been significantly altered during the period of delay."). The only alleged limitation on proof presentation cited by Miller actually reveals *additional* inquiry by board members concerning Miller's records after extensive review of those same materials by both parties' expert witnesses. It appears that any confusion in the record stemmed from Miller's inadequate record keeping, not delay in the proceedings. In sum, Miller was accorded a full opportunity to review the documents upon which the board relied for its charges, to conduct discovery, to depose and cross examine the board's investigator and peer review committee members, and to mount a full defense to the charges at the disciplinary hearing. No prejudice has been shown.

■ We are likewise unconvinced by Miller's claim that the board lacks authority to discipline him because no patients complained about his care. The position Miller takes is contrary to the law governing physician discipline. Iowa Code section 272C.3 authorizes the licensing board to review and investigate alleged acts or omissions involving sub-

standard care, whether "upon written complaint or upon its own motion pursuant to other evidence received." *See also* Iowa Code § 148.6(2)(g) (authorizing discipline for repeated departure from minimum standard of acceptable practice; actual injury to patient need not be established); Iowa Admin. Code r. 653—12.4(2)(b) (same). The focus of these proceedings illustrates the importance of these rules. Miller was charged with inappropriate prescribing of controlled substances to patients suffering from chronic but non-terminal conditions. The record reveals that patients who receive large quantities of controlled substances for pain are not likely to file complaints with the board. This is particularly true of patients with a history of substance abuse. Thus it is in the public interest for other professionals—such as the pharmacist, director of nursing, and law enforcement personnel involved here—to serve as reliable sources of complaint information to the board.

We have considered all of the arguments advanced by Miller, whether discussed or not, and find no basis for reversal. The medical board's decision to impose a two-year probationary period upon Miller, accompanied by strict supervision of his prescription practices, is clearly a matter resting within its area of expertise. *See Burns v. Board of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993). The district court was correct in so finding. We therefore affirm the judgment of the district court.

**AFFIRMED.**

All justices concur except LARSON, J., who takes no part.