# IN THE COURT OF APPEALS OF IOWA

No. 16-1524
Filed July 6, 2017

**DANIEL W. WILHARM,**
     Plaintiff-Appellant,

**vs.**

**EMPLOYMENT APPEAL BOARD and IOWA STEEL FABRICATION, L.L.C.,**
     Defendants-Appellees.
_____

     Appeal from the Iowa District Court for Polk County, David May, Judge.


     Daniel Wilharm appeals an Employment Appeal Board decision disqualifying him from receipt of unemployment benefits.  **AFFIRMED.**



     John S. Allen and Lois Cox of the University of Iowa College of Law and Andrew J. Workman, Nathan Converse, Kaitlin Boettcher, and Bradyn Fairclough, Student Legal Interns, Iowa City, for appellant.

     Richard Autry of the Employment Appeal Board, Des Moines, for appellees.


     Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Daniel Wilharm appeals an Employment Appeal Board decision disqualifying him from receipt of unemployment benefits.

## I.   *Background Facts and Proceedings*

The Board found the following facts. Wilharm drove a truck for Iowa Steel Fabrication. His primary duty was to deliver parts. Deliveries were "time-sensitive." Wilharm "had a tardiness issue" for which he was issued two warnings.

Shortly after these warnings were given, Iowa Steel sent Wilharm to deliver goods to a contractor three-and-a-half hours away. Wilharm left at 7:00 a.m. At about 4:00 p.m., the contractor notified Iowa Steel that Wilharm did not arrive until after 3:30 p.m. and "jumped onto and ran the contractor's forklift, which was against both the Employer's and contractor's safety code." When questioned about his whereabouts, Wilharm told Iowa Steel he "took a nap." Following this incident, Wilharm received warnings for being late and for "purchasing food with a gas card."

The morning after this napping incident, Iowa Steel gave Wilharm a load to deliver to Kansas City. He was instructed to then pick up a load in Omaha. The entire trip should have taken "seven hours and forty minutes, which included loading and unloading." At about 3:00 p.m., Wilharm called Iowa Steel and said he was just leaving Kansas City for Omaha. He did not arrive in Omaha until 5:00 p.m., two hours after the plant closed. Iowa Steel asked about the delay. Wilharm said he started the trip late because he had to go home and look for his wallet. Iowa Steel terminated Wilharm the next day.

Wilharm made a claim for unemployment insurance benefits, which was denied. Wilharm filed an agency appeal. Following an evidentiary hearing, an administrative law judge reversed the denial. Iowa Steel appealed the reversal to the Employment Appeal Board. The Board reversed the administrative law judge's decision after concluding Wilharm "was discharged for disqualifying misconduct." The Board provided the following reasoning:

> [T]he record solidly supports that Mr. Wilharm's behavior was a blatant disregard for the rights and obligations he owed to the Employer. His excuse that he took a nap on the 6th does not absolve his responsibility to make timely deliveries. Any reasonable person should know that taking naps on company time is not acceptable behavior and an employee needn't have a warning to know that. The Claimant failed to display even a modicum of concern for the Employer's interests when he failed to contact the Employer on the 7th when he knew he would be late because he had to return home to retrieve his wallet. In considering these final incidents, along with his verbal and written warnings, we see that the Claimant continued his pattern of failing to comply with company policy.

Wilharm petitioned for judicial review of the Board's decision. The district court affirmed the decision and this appeal followed.

## II. Misconduct

An employee who is terminated for misconduct is disqualified from receiving unemployment benefits for a period of time. *See* Iowa Code § 96.5(2)(a) (2015). Misconduct is defined as

> a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show

> an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

Iowa Admin. Code r. 871–24.32(1)(a).

Wilharm argues the Board's fact findings are unsupported by substantial evidence. *See* Iowa Code § 17A.19(10)(f). Substantial evidence "means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.* § 17A.19(10)(f)(1). "In our evaluation of the evidence, we focus not on whether the evidence would support a different finding than the finding made by the [agency], but whether the evidence supports the findings actually made." *Broadlawns Med. Ctr. v. Sanders*, 792 N.W.2d 302, 306 (Iowa 2010). "An appellate court should not consider evidence insubstantial merely because the court may draw different conclusions from the record." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007).

The Board's material fact findings are essentially undisputed. There is no question Wilharm received warnings for tardiness before the two incidents that precipitated his discharge,[1] arrived late at the first delivery site because he took a nap, and arrived late in Omaha because he went home to retrieve his wallet.

---

[1] We discern no error in the Board's consideration of these warnings. *See Ringland Johnson, Inc. v. Hunecke*, 585 N.W.2d 269, 271 (Iowa 1998) ("Past acts . . . can be used to determine the magnitude of the current act.").

Wilharm disputes the agency finding that he lacked permission to use a forklift at the first delivery site. But he does not dispute the five-hour delay in his arrival time and his failure to immediately notify Iowa Steel of the delay. While he maintains he "could not stay awake on longer trucking hauls and was concerned about causing an accident," he did not inform his employer of his fatigue that day or his need to take a lengthy nap.

Wilharm also rationalizes his late arrival in Omaha by citing the need to carry his driver's license. He asserts he "made the decision to delay his trip and retrieve his wallet instead of continuing on his route, in order to comply with Iowa law." But, again, he does not dispute the delay of up to four hours to obtain his license and his arrival well after closing. He also does not dispute notifying Iowa Steel only after an extended sojourn at home. Like the district court, we are persuaded the agency fact findings were supported by substantial evidence.

Wilharm next appears to challenge the Board's application of law to fact. *See* Iowa Code § 17A.19(10)(m). We find nothing irrational, illogical, or wholly unjustifiable in the Board's determination that "Mr. Wilharm's behavior was a blatant disregard for the rights and obligations he owed to the Employer."

Finally, Wilharm characterizes the Board's decision as an "erroneous interpretation of law." At oral argument, he backed away from this assertion. Suffice it to say the Board was not called upon to interpret the legal definition of misconduct. In any event, we discern no legal error in the agency's conclusions of law.

We affirm the Board's decision to deny Wilharm's claim for unemployment benefits.

**AFFIRMED.**