**In re DETENTION OF Harold WILLIAMS.**

**State of Iowa, Appellee,**

v.

**Harold Williams, Appellant.**

**No. 99–2055.**

Supreme Court of Iowa.

May 31, 2001.

Mark Smith, First Assistant State Public Defender, and Thomas J. Gaul and

Catherine Johnson, Assistant Public Defenders, for appellant.

Thomas J. Miller, Attorney General, and Scott D. Brown and Roxann M. Ryan, Assistant Attorneys General, for appellee.

NEUMAN, Justice.

This is another in a series of appeals concerning the Sexually Violent Predator Act, Iowa Code chapter 229A (1999)[1]. *See In re Detention of Garren,* 620 N.W.2d 275 (Iowa 2000); *In re Detention of Morrow,* 616 N.W.2d 544 (Iowa 2000). The case before us is distinguished by the fact that the respondent, Harold Williams, demanded and received a jury trial. *See* Iowa Code § 229A.7(2) (Supp. 1999). The jury's unanimous verdict found, beyond a reasonable doubt, that Williams is a sexually violent predator. That means he must be committed to the custody of the director of the Department of Human Services (DHS) for control and treatment until he is "safe to be at large." *Id.* § 229A.7(3).

Williams' appeal includes several issues resolved in *Garren* that need not be revisited here. To begin, his claim that chapter 229A is criminal in nature, not civil, has been decided to the contrary. *Garren,* 620 N.W.2d at 283. Because commitment proceedings under chapter 229A are civil, neither ex post facto nor double jeopardy principles apply. *See id.* at 283–84. Our opinion in *Garren* also rejected the same substantive due process claim urged here by Williams. We held that although chapter 229A affords no less-restrictive alternative than placement in a secure facility, the statute nevertheless passes constitutional muster because a "reasonable fit" exists between the State's goal of protecting the public "and the means chosen to advance that purpose." *Id.* at 285 (quoting *In re B.B.,* 516 N.W.2d 874, 879 (Iowa 1994)).

Turning to Williams' remaining issues, we shall address his equal protection argument because it turns on a different classification than similar claims urged, and rejected, in *Morrow* and *Garren.* Williams also challenges the size of the jury impaneled to try him, the admissibility of evidence concerning prior bad acts, and the court's refusal to instruct the jury on two topics: less-restrictive treatment alternatives and Williams' claim that commitment requires proof of a "high" likelihood of reoffending.

The State cross-appeals the court's refusal to permit victim testimony in its case in chief. It also challenges the court's pretrial ruling regarding jury unanimity.

Pertinent facts will be detailed as they relate to the issues addressed.

Our appellate review of this action, tried at law, would ordinarily be for the correction of legal error. Iowa R. App. P. 4. To the extent Williams' arguments rest on constitutional principles, however, we review them de novo in light of the totality of the circumstances. *Morrow,* 616 N.W.2d at 547. For the reasons that follow, we affirm on Williams' appeal and affirm in part and reverse in part on the State's cross-appeal.

## I. Equal Protection.

Williams argues that Iowa Code chapter 229A violates both his federal and state rights to equal protection because "it treats mentally ill sexual offender commitments differently than other mentally ill civil commitments." His argument rests on the premise that individuals subject to commitment under chapter 229A are simi-

---

1. All statutory references shall be to the 1999 Code of Iowa unless otherwise indicated.

larly situated to mentally ill persons committed pursuant to chapter 229. The State counters that the two classes are not similarly situated because they do not have the same treatment needs. Urging the application of a rational basis test—not strict scrutiny, as Williams seeks—the State contends no equal protection violation can be shown. We agree.

■ *A. Fundamental legal principles.* Both the United States and Iowa Constitutions guarantee equal protection under the law to all persons. U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 6. Both require that similarly situated persons be treated alike under the law. *Morrow,* 616 N.W.2d at 548. Conversely, persons who are not similarly situated need not be treated the same for equal protection purposes. *Id.* When two groups are similarly situated, the court must determine the rights implicated by the challenged classification and the appropriate level of review. *See generally* 3 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 18.3, at 213–26 (3d ed. 1999).

■ The first step in any equal protection analysis is to determine what level of scrutiny applies. The determination rests on the rights implicated by the statutory classification. Because his liberty is at stake, Williams urges us to apply strict scrutiny to his challenge. This highest level of review is applied only when the challenged statute classifies persons in terms of their ability to exercise a fundamental right or when it classifies or distinguishes persons by race or national origin. *Exira Cmty. Sch. Dist. v. State,* 512 N.W.2d 787, 793 (Iowa 1994). Such a statute is not presumed constitutional. Rather, the State carries the burden of showing that the classification is narrowly tailored to serve a compelling government interest. *Garren,* 620 N.W.2d at 286.

■ The State asserts that the challenged classification need only satisfy the rational basis test. Under this familiar test, differential treatment is allowed so long as it is rationally related to a legitimate government interest. *See Miller v. Bd. of Med. Exam'rs,* 609 N.W.2d 478, 482 (Iowa 2000). Because statutes not subject to strict scrutiny enjoy presumptive constitutionality, a challenger must prove that the statutory classification is arbitrary and bears no rational relationship to a legitimate government interest. *Id.*

In *Garren* we noted that other states have not been uniform in deciding which level of scrutiny to apply when faced with an equal protection challenge to a sexually violent predator (SVP) statute. *See Garren,* 620 N.W.2d at 286 (citing jurisdictions). Without resolving the issue, we elected to apply strict scrutiny, confident that chapter 229A "passes muster" even when judged by the highest standard. *Id.; cf. Morrow,* 616 N.W.2d at 548 n. 1 (applying rational basis standard because strict scrutiny argument not preserved for appeal).

It is significant, we think, that the equal protection challenges addressed in *Morrow* and *Garren* differ markedly from the one urged here by Williams. Morrow's claim of inequality asserted that he was being treated differently than other "violent offenders with . . . antisocial personality disorder[s] who have served their prison sentences and are due for release." *Morrow,* 616 N.W.2d at 548 (alterations in original). Garren claimed unequal treatment as compared to "all other recidivists." *Garren,* 620 N.W.2d at 286.

■ Here Williams challenges classification by type of mental illness or abnormality. Neither the United States Supreme Court nor other state courts have ever applied a strict scrutiny standard in this

circumstance. *See, e.g., Heller v. Doe,* 509 U.S. 312, 321–28, 113 S.Ct. 2637, 2643–47, 125 L.Ed.2d 257, 271–76 (1993) (applying rational basis standard to review different procedures used to commit those who are mentally ill and those who are mentally retarded); *Illinois v. Pembrock,* 62 Ill.2d 317, 342 N.E.2d 28, 30 (1976) (applying rational basis test to different commitment procedures for sexually violent predators and mentally ill). Importantly, "mentally ill" is not a suspect classification. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 445–46, 105 S.Ct. 3249, 3257, 87 L.Ed.2d 313, 324 (1985). As the Arizona Court of Appeals recently observed, governmental classifications of the mentally ill have historically been analyzed under the rational basis test even when individual liberty was at stake. *Martin v. Reinstein,* 195 Ariz. 293, 987 P.2d 779, 796 (1999).

We therefore hold that the classification at issue here was properly reviewed by the district court using a rational basis standard.

■ *B. Applying rational basis test.* We are convinced that the differentiation between SVP commitment under chapter 229A, as compared to general commitment of the mentally ill under chapter 229, reveals a legislative scheme that is rationally related to a legitimate state interest. We have said that a classification is reasonable

> if it is "based upon some apparent difference in situation or circumstances of the subjects placed within one class or the other which establishes the necessity or propriety of distinction between them." A classification "does not deny equal protection simply because in practice it results in some inequality; practical problems of government permit rough accommodations...."

*Morrow,* 616 N.W.2d at 548 (quoting *State v. Mann,* 602 N.W.2d 785, 792 (Iowa 1999)) (citations omitted).

The legislation under review plainly states the reasons for distinguishing between mentally ill sex offenders and other mentally ill persons. It explains that among those convicted of sex crimes there exists a

> small but extremely dangerous group of sexually violent predators ... who do not have a mental disease or defect that renders them appropriate for involuntary treatment pursuant to the treatment provisions for mentally ill persons under chapter 229, since that chapter is intended to provide short-term treatment to persons with serious mental disorders and then return them to the community.

Iowa Code § 229A.1. Contrasting those committed under chapter 229, the legislation states that sexually violent predators "have antisocial personality features that are unamenable to existing mental illness treatment modalities and that render them likely to engage in sexually violent behavior." *Id.* Finally, the legislation recognizes that the mental condition of sexually violent predators makes "the existing involuntary commitment procedure under chapter 229 ... inadequate to address the risk these sexually violent predators pose to society." *Id.* Thus the treatment required for sexually violent predators differs greatly from the treatment available under chapter 229. *Id.; accord Morrow,* 616 N.W.2d at 549.

As Williams rightly notes, persons committed under chapter 229 because of mental illness "lack[ ] sufficient judgment to make responsible decisions" and are likely to physically injure themselves or others without treatment. Iowa Code § 229.1(15)(a)-(b). But their mental illness does not predispose them to commit sexually violent acts. This important distinction between those committed under

chapter 229 and SVPs committed under chapter 229A dictates different treatment, both in method and duration. As this court noted in *Morrow,* "[t]he particularly devastating effects of sexual crimes on victims, and the offenders' need for specialized treatment provide a rational basis for the classification." 616 N.W.2d at 549. So also here, the specialized treatment needs of SVPs, when compared to others who suffer from different mental abnormalities, justify the different classification and treatment chosen by the legislature.

Because the legislative scheme of chapter 229A is rationally related to the State's interest in protecting the public while effectively treating those with this particular mental disorder, the statute does not violate equal protection under either the federal or Iowa Constitution. The district court was correct in so ruling.

## II. Jury Issues.

*A. Size.* By motion to adjudicate law points filed prior to trial, Williams asserted that the correct jury size in a trial held pursuant to Iowa Code section 229A.7(2) (Supp. 1999) was twelve persons. He rested his argument on the Iowa Constitution, which provides for a twelve-person jury unless the legislature authorizes a lesser number. Iowa Const. art. I, § 9. The only reference to jury size in chapter 229A directs that "[t]he number and selection of jurors shall be determined as provided in chapter 607A." Iowa Code § 229A.7(2) (Supp. 1999). However, chapter 607A addresses only the procedure for calling jurors; it is silent on the number of jurors required in a particular case.

Williams contends that chapter 607A's silence on the question means the general assembly has not authorized a jury of less than twelve for chapter 229A proceedings. In *Garren,* however, this court held that chapter 229A is a civil statute. *Garren,*

620 N.W.2d at 283. The Iowa Rules of Civil Procedure govern the practice in all courts of this state unless otherwise provided by statute. *See* Iowa R. Civ. P. 1. Rule 187(i) calls for an eight-person jury in civil jury trials.

Consistent with our holding in *Garren,* we presume that the legislature intended the rules of civil procedure to apply in actions brought under chapter 229A unless the statute specifically states otherwise. *Cf.* § 229A.7(3) (Supp. 1999) (requiring determination by criminal standard of "beyond a reasonable doubt"). Thus the district court committed no error when it deemed an eight-person jury sufficient under the Iowa Constitution to adjudicate Williams' commitment under chapter 229A.

*B. Unanimity.* On a related point, chapter 229A specifically provides that a jury's finding of SVP status must be by unanimous verdict. Iowa Code § 229A.7(3). Iowa Rule of Civil Procedure 203(a), however, permits a civil jury to return a less-than-unanimous verdict of seven to one after it has deliberated for at least six hours. Williams successfully argued in advance of trial that, if the rules of civil procedure apply, rule 203(a) should permit a jury to find by a vote of seven to one that the respondent is *not* an SVP. In other words, Williams claimed entitlement to be released—rather than face retrial—if the jury's non-unanimous verdict favored him. The district court agreed.

The State resisted Williams' contention on the ground rule 203(a) does not apply to prevent a mistrial in this context. Although the jury's verdict here was unanimous, and so the point is moot, the State urges this court to address the district court's ruling so that the matter may be clarified for future trials under chapter 229A.

We think the State's position has merit. Although the statute is civil in nature, the liberty interests at stake prompted the legislature to impose a higher burden of proof on the State. Corresponding to this higher standard of proof, the jury's verdict to commit must be unanimous. *See* Iowa Code § 229A.7(3) (Supp. 1999). That does not mean the legislature intended to hybridize the rules of civil and criminal procedure concerning the verdict.

There is only one issue on trial in a case like this—whether the respondent is a sexually violent predator under section 229A.7(3).[2] Given that fact, and the fact that commitment requires a unanimous verdict, we think it would be absurd to conclude the legislature intended to permit a less-than-unanimous verdict to release the respondent. Such a result finds no support in this legislative scheme.

 We hold that rule of civil procedure 203(a) does not apply in chapter 229A proceedings. If the jury cannot return a unanimous verdict, the court must discharge the jury and order a new trial. *See* Iowa Code § 229A.7(5) (Supp. 1999) (upon mistrial, court shall order respondent held pending retrial within ninety days); *accord* Iowa R. Civ. P. 200.

## III. Evidentiary Issues.

*A. Background.* Before turning to Williams' evidentiary issues, we need to elaborate on the record leading up to this proceeding and the facts revealed at trial.

The State commenced this action as Williams was about to discharge a sentence for second-degree sexual abuse, having served ten years on an indeterminate twenty-five year term. *See* Iowa Code §§ 709.3(2), 902.9(1) (1987) (defining crime of second-degree sexual abuse and punishment therefor). The victim of Williams' sexual assault was the five-year-old daughter of friends with whom he was then living. This incident, which involved digital penetration, followed four other convictions for sexual misconduct with children. In 1977, Williams pled guilty to lascivious acts with a child. Iowa Code § 725.10 (1977). He was released after serving roughly one-half of his five-year sentence. In 1981 he pled guilty and served a short prison term for indecent contact with a child. 1981 Iowa Acts ch. 204, § 7 (codified at Iowa Code § 709.12(1) (1983)). Again, in 1984, Williams pled guilty and served time for two more charges of indecent contact and lascivious acts. Iowa Code §§ 709.12(1), 709.8(1) (1983).

Williams, who was forty-three years old at the time of these commitment proceedings, claims to be a recovering pedophile. In chilling testimony he estimated that, prior to 1992, he engaged in sexual fantasies about children "probably as frequently as breathing." During his most recent incarceration he took part in a sex offender program. Through self-help and work with a psychologist, Williams testified, he has learned to scrupulously avoid the "trigger" for his sexual misconduct—"the sight close up and the smell close up of a young girl."

Beginning in 1999, and continuing up to the time of trial, Williams has taken regular injections of Depo Provera, a form of chemical castration designed to curb his sex drive. Two psychologists examined Williams in advance of trial and adminis-

---

**2.** Under the statute, a "sexually violent predator" is defined as

a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility. Iowa Code § 229A.2(9) (Supp. 1999).

tered a battery of diagnostic tests. Dr. Caton Roberts, testifying on behalf of the State, stated that Williams suffers from pedophilia as well as a general personality disorder, a combination making him highly likely to reoffend unless kept in a secure facility. Williams' own expert, Dr. Loren Rogers, confirmed the diagnosis of pedophilia. He testified, however, that Williams also suffers from posttraumatic stress disorder and schizoid personality. In his opinion, Williams' disorders could more effectively be treated in a less-secure environment than the state medical facility at Oakdale.

*B. Proof of prior convictions.* Prior to trial, Williams moved in limine to prevent the State from introducing proof of his prior convictions, either through the testimony of victims or by any other means. Williams rested his argument on his willingness to stipulate to the underlying offenses. He also argued that the testimony of his own expert would confirm that he suffers from a mental abnormality, pedophilia. Thus, from his perspective, the only relevant and material evidence concerned whether he would be likely to reoffend unless confined to a secure facility. *See* Iowa Code § 229A.2(9) (Supp. 1999).

The State urged the court to reject Williams' argument, stressing that proof of prior conviction is not only an essential element of the State's case, prior sexually violent behavior is a relevant predictor of future dangerousness. The district court agreed with the State on both counts. It granted Williams' limine motion, however, to the extent the State sought to prove its case through victim testimony. Such means of proof was not essential to the State's case, the court reasoned, and the probative value of such inquiry would be outweighed by its inherently prejudicial nature.

Neither Williams nor the State was content with the court's ruling, and each has challenged it on appeal. They each face an uphill battle. Rulings on relevance of evidence and method of proof are entrusted to the sound discretion of the trial court. *State v. Griffin,* 564 N.W.2d 370, 372 (Iowa 1997). Reversal is warranted only upon a showing that the court has abused its discretion. *Id.* Neither party has made that showing here.

Iowa Rule of Evidence 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have observed that the listed exceptions are not exclusive; the key question is "whether the challenged evidence is relevant and material to some legitimate issue other than a general propensity to commit wrongful acts." *State v. Plaster,* 424 N.W.2d 226, 229 (Iowa 1988) (quoting *State v. Barrett,* 401 N.W.2d 184, 187 (Iowa 1987)).

The test to determine admissibility under rule 404(b) is two-pronged. *State v. Castaneda,* 621 N.W.2d 435, 440 (Iowa 2001). First the court must determine whether evidence of other crimes is relevant to prove a legitimate issue in question. *Id.* Evidence is relevant if it tends to make the existence of any consequential fact more probable or less probable than it would be without the evidence. Iowa R. Evid. 401. If the court determines that the evidence is relevant for some purpose other than proving bad character, it must then decide if the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *Castaneda,* 621

N.W.2d at 440. If the court determines the prejudicial effect outweighs the probable probative value of the contested evidence, the evidence, though relevant, is inadmissible. *Id.*

■ Plainly the proof of Williams' prior convictions was essential, and therefore relevant, to the State's case. No commitment could be had without it. And Williams' willingness to so stipulate did not prevent the State from tendering evidence on the issue. *State v. Cuevas,* 288 N.W.2d 525, 530 (Iowa 1980). At the same time, Williams' direct testimony on these crucial matters minimized the State's need for victim testimony. Victim testimony would have added little substance, but potentially distracting emotion, to the questions of prior sexual misconduct and likelihood of reoffending. We think the district court wisely balanced the issues of relevance and unfair prejudice here. No ground for reversal appears.

*C. Rebuttal testimony concerning other bad acts.* The fighting issue at trial concerned the State's use of victim testimony to rebut Williams' testimony concerning an outing at Clear Lake in 1983. Williams admitted fondling two girls, aged five and thirteen, for which he was convicted of indecent contact and lascivious acts. Upon further questioning by the State, Williams denied having sexual contact with any of the other children who accompanied him to the lake. He later testified to the importance of "total honesty" concerning victims of his sex acts in order to further his progress in treatment. In that connection he volunteered his involvement in several unprosecuted sex acts with children dating back to his teenaged years.

Over Williams' objection, the court then permitted the State to offer the brief rebuttal testimony of three sisters, now adults, who were among the other children with Williams at Clear Lake in 1983. They were then aged seven through nine. Each clearly recalled being fondled by Williams, and urged to touch his penis, after he pulled down their swimming suits.

■ The question on appeal is whether the court abused its discretion in permitting the rebuttal evidence just described. We conclude that it did not. The purpose of rebuttal testimony is to explain, controvert or disprove evidence tendered by the other side. *State v. Miller,* 229 N.W.2d 762, 770 (Iowa 1975). The sisters' rebuttal evidence was relevant and served that purpose here.

■ First, the evidence directly countered Williams' claim that he has come to terms with his disorder and, therefore, need not be confined in a secure facility for treatment. Second, it was not cumulative of the conviction evidence permitted under the court's limine ruling. *See id.* Its purpose was not to paint Williams as a bad person but to give a complete picture of a person unable, or unwilling, to own up to past behaviors. Having an accurate portrait of Williams was crucial to the jury's decision regarding his dangerousness and likelihood of reoffending.

■ Nor was the probative value of the rebuttal testimony outweighed by its prejudicial impact. The testimony was brief and straightforward. These were not eight-year-olds describing recent traumatic events. They were adults matter-of-factly recalling unpleasant sexual encounters with Williams during their childhoods. We conclude the court was well within its discretion to admit it.

## IV. Jury Instructions.

*A. "Highly likely" v. "more likely than not."* Williams contends the court denied him due process when it refused to in-

struct the jury that "likely to engage in predatory acts of sexual violence" means "*highly* likely to engage in acts of a sexually violent nature in the future if released." Williams rests his argument on an alleged ambiguity in chapter 229A. The SVP act's preamble states that "[t]he general assembly finds that sexually violent predators' likelihood of engaging in repeat acts of predatory sexual violence is *high* ...." Iowa Code § 229A.1 (emphasis added). But the statute defines the term "likely to engage in predatory acts of sexual violence" as "the person *more likely than not* will engage in acts of a sexually violent nature." Iowa Code § 229A.2(3) (Supp. 1999) (emphasis added). The district court instructed the jury in accordance with the statutory definition. Williams claims this was wrong and erroneously reduced the State's burden, contrary to due process. We disagree.

Two courts have wrestled with the issue posed by Williams. He relies heavily on *In re Linehan*, 557 N.W.2d 171 (Minn. 1996), *vacated and remanded sub nom. Linehan v. Minnesota*, 522 U.S. 1011, 118 S.Ct. 596, 139 L.Ed.2d 486, *on remand*, 594 N.W.2d 867 (Minn. 1999). Like chapter 229A, Minnesota's Sexually Dangerous Persons Act states that future harm must be "likely." *Linehan*, 557 N.W.2d at 180. But, unlike its Iowa counterpart, the Minnesota statute requires only "clear and convincing evidence" to support commitment. *Id.* To comport with due process and assure "a degree of overall certainty consistent with the statute," the Minnesota court required a showing that it was "highly likely" that alleged predators would commit sexually violent acts in the future. *Id.; see also In re Linehan*, 594 N.W.2d 867, 876 (Minn. 1999).

The Washington Court of Appeals, responding to an argument identical to the one urged here by Williams, rejected Minnesota's insistence on the "highly likely" standard because—like Iowa—commitment under Washington's SVP statute requires proof beyond a reasonable doubt. *In re Detention of Brooks*, 94 Wash.App. 716, 973 P.2d 486, 491 (1999), *petition for review granted*, 138 Wash.2d 1021, 989 P.2d 1136 (1999). The court observed that "clear and convincing" proof is all that is required to meet due process in ordinary civil commitments. *Id.* (citing *Addington v. Texas*, 441 U.S. 418, 428, 99 S.Ct. 1804, 1810, 60 L.Ed.2d 323, 332 (1979)). It therefore reasoned that because Washington requires the highest standard of proof, "the term 'likely' can be given its ordinary meaning without the risk of falling below the constitutionally required minimum of clear and convincing evidence." *Id.*

■■■■ We agree with the Washington court's analysis. In determining what process is due an individual threatened with the loss of a right, we are guided by the factors announced in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976). We must consider (1) the private interest affected, (2) the State's interest, and (3) the risk of erroneous deprivation of the individual's interest under the process already provided and the value, if any, of additional or different safeguards. *Id.* Put another way, due process requires that "[an] individual ... not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Addington*, 441 U.S. at 427, 99 S.Ct. at 1810, 60 L.Ed.2d at 331–32.

In this case, Williams' interest in freedom from restraint is matched by the State's equally compelling interest in protecting society from a person prone to sexually assaulting children. The statute contemplates that the fact finder's decision will not be made lightly, for chapter 229A

imposes on the State the highest burden of proof—beyond a reasonable doubt. The State, rather than Williams, bears the risk of error because any doubt as to Williams' likelihood of reoffending must be resolved in his favor.

■ We thus conclude that defining the statutory term "likely" as "more likely than not" or "more probable than not" will not diminish the required high level of proof. The instruction given by the district court not only comports with the statutory definition, due process requires nothing more. Williams' argument to the contrary is without merit.

*B. Less restrictive alternative.* Williams also challenges the court's marshalling instruction. He has consistently maintained that he could be prevented from reoffending through placement in a community-based facility rather than in the sex offender treatment unit at Oakdale. He claimed at trial, and urges on appeal, that chapter 229A implicitly provides for a less-restrictive-alternative defense. The court allowed Williams, over the State's objection, to present evidence on this point, but refused to instruct the jury on the specific defense. Williams contends the court's refusal violated his right to present a defense.

Williams' proposed instruction stated, in pertinent part:

If you find that the State has shown beyond a reasonable doubt that Harold Williams is a sexually violent predator, you must further find that[:]

1. The State has shown beyond a reasonable doubt that unless Harold Williams is confined in a secure facility, he will engage in the predatory acts as defined in these instructions;

2. That the State has proven beyond a reasonable doubt that ... there are no less restrictive alternative treatment fa-

cilities or programs in which to place Harold Williams to protect society.

Williams also requested a special verdict form requiring the jury to answer the following question: "Has the State proven beyond a reasonable doubt that [Williams] must be kept only in a secure facility to prevent him from engaging in predatory acts constituting sexually violent offenses?" The court denied Williams' request. Instead, the court gave the following instruction:

To find the Respondent is a sexually violent predator, each of the following elements must be proved beyond a reasonable doubt[:]

1. The Respondent has been convicted of a crime of sexual violence;

2. The Respondent suffers from a mental abnormality;

3. That such mental abnormality makes the Respondent likely to engage in predatory acts constituting sexually violent offenses if not confined in a secure facility.

If you find from the evidence that each of these elements has been proven beyond a reasonable doubt, then it will be your duty to return a verdict that the Respondent is a sexually violent predator.

In support of the court's instruction, the State contends that chapter 229A does not authorize commitment to anything less than a secure facility. Under the statute, the jury's choices are limited: civil commitment in a secure facility or release. Because the fact finder's duty is limited, the State argues, the trial court has no authority to read into the SVP statute less-restrictive treatment options.

■ It is axiomatic that courts must correctly instruct the jury on the law pertaining to material issues supported by evidence in the record. *State v. Monk,* 514

N.W.2d 448, 451 (Iowa 1994). And a defendant—or, in this case, a respondent—is "entitled to have instructions presented relating to any theory of defense for which there is foundation in the evidence if he or she makes a timely request and it sets out a correct declaration of the law." *Id.* (quoting *State v. Stewart,* 445 N.W.2d 418, 421 (Iowa Ct. App. 1989)).

 We are convinced, as was the district court, that Williams' proposed instruction is not a correct statement of the law. Essential to any finding that an accused is a sexually violent predator is a finding that the person's mental abnormality makes him "likely to engage in predatory acts constituting sexually violent offenses, *if not confined in a secure facility.*" Iowa Code § 229A.2(9) (Supp. 1999) (emphasis added). The "secure facility" issue is part and parcel of the SVP finding under the statute, not a separate issue addressed *after* determining the respondent is a sexually violent predator.

Nor do we find any support in the statute for Williams' claim that the State must prove beyond a reasonable doubt that no less-restrictive alternative treatment facilities are available. The statute simply does not contemplate placement in a less-restrictive facility. Any evidence presented by Williams to show that he could be kept from reoffending by placement in other than a secure facility generated the possibility of doubt on a crucial element of the State's case. But such defense did not burden the State with an additional proof requirement not mentioned in chapter 229A.

Because Williams' proposed instruction misstated the law, the trial court committed no error when it refused to give the instruction to the jury.

## V. Conclusion.

We affirm the judgment of commitment entered by the district court on the jury's verdict in accordance with Iowa Code section 229A.7(3) (Supp. 1999). Our affirmance includes approval of the court's decision—challenged by the State on its cross-appeal—to restrict the presentation of victim testimony except on rebuttal. Although it has no bearing on the judgment in this case, we reverse on the State's cross-appeal to the extent the court erroneously believed chapter 229A permits a less-than-unanimous verdict to avoid mistrial on the question of commitment or release.

**AFFIRMED ON APPEAL; CROSS-APPEAL AFFIRMED IN PART AND REVERSED IN PART.**