**IN THE COURT OF APPEALS OF IOWA**

No. 21-0395
No. 21-0779
Filed January 12, 2022

**IN THE INTEREST OF P.S.,**
**Minor Child,**

**K.S., Mother,**
     Appellant,

**K.S., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Madison County, Kevin Parker, District Associate Judge.

The mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Raya D. Dimitrova of Carr Law Firm, P.L.C., Des Moines for appellant mother.

Christine E. Branstad of Branstad & Olson Law Office, Des Moines for appellant father.

Thomas J. Miller, Attorney General, and Natalie Deerr, Assistant Attorney General, for appellee State.

Erica D. Parkey, Des Moines, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

The mother and father separately appeal the termination of their parental rights to P.S., who was born in February 2020. The child tested positive for methamphetamine at birth. Shortly after birth and before the child left the hospital, the parents consented to removal of the child from their care. The child was soon adjudicated in need of assistance.

The Iowa Department of Human Services (DHS) has been involved with the mother since December 2018, when she gave birth to another child[1] who also tested positive for methamphetamine. Shortly after P.S.'s birth in February 2020, the mother claimed she last used methamphetamine "a couple months" ago, and the DHS recommended the mother undergo substance-abuse and mental-health evaluations and treatment. The mother obtained a substance-abuse evaluation, which recommended inpatient treatment. The mother enrolled in outpatient treatment instead, which she only attended sporadically. She was unsuccessfully discharged due to lack of attendance. After discharge, the DHS asked the mother to submit to a drug test. The mother failed to attend testing, claiming she lacked transportation and it would be an "inconvenience" to travel to the testing facility.

The DHS also became involved with the father in December 2018 when the older child was born. Paternity testing showed he was not the biological father of the older child, so services stopped. He acknowledges he continued to use drugs after he was excluded as the older child's father. The DHS became involved with

---

[1] The rights of both parents of this older child were separately terminated in January 2021. The father of P.S. is not the father of the older child. Neither parent of the older child appealed the termination.

the father again in February 2020 when P.S. was born, and the father provided a negative drug test at the time. P.S.'s paternity was initially in question, and the father largely refused the DHS services after P.S. was born. In June, a paternity test showed the father was P.S.'s biological father, and the father began to reengage with the DHS. In July, the DHS requested the father submit to a drug screen. The father failed to attend testing. In August, the father entered a residential substance-abuse treatment facility. The father testified he last used illegal substances about two weeks before entering the residential facility. The father continued living in the residential facility through the end of the termination hearing.

The State filed a petition to terminate parental rights of both parents in August 2020. The juvenile court held a concurrent permanency and termination hearing on November 19, December 7, and December 14. The court filed its order terminating the rights of both parents in March 2021. The court issued a corresponding permanency order on the same date. The mother appealed shortly after the termination order, and the father filed post-termination motions asking the court to reopen the record and reconsider its termination order. The court denied the father's motions, and the father appealed. We address both parents' appeals in this consolidated opinion.

I.      **Standard of Review**

We review termination-of-parental-rights proceedings de novo.[2] We give weight to the juvenile court's findings of fact, especially as to witness credibility,

---

[2] *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021).

but we are not bound by them.[3]  "We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116 (2020).  Evidence is 'clear and convincing' when there are no 'serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence.'"[4]

## II.     The Father's Procedural Claims

Before proceeding to the merits of termination, we address the father's procedural claims.

### A.     Combined Hearing

The father argues the juvenile court should have granted his motion to sever the concurrent permanency and termination hearing on both statutory and constitutional grounds.  As to the statutory grounds, we have already held "our statutory scheme does not bar holding a concurrent permanency and termination hearing."[5]  We continue to hold nothing in the statutes or rules prohibits a concurrent permanency and termination hearing.

To the extent the father challenges the juvenile court's discretion in denying his motion to sever, a court may sever proceedings "for convenience or to avoid prejudice."[6]  The court first held a permanency hearing on August 27, 2020.  During

---

[3] *Id.*

[4] *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

[5] *In re H.V.*, No. 15-1481, 2015 WL 6507559, at *1 (Iowa Ct. App. Oct. 28, 2015); *accord* Iowa R. Civ. P. 1.913 (allowing the court to consolidate separate actions involving "common questions of law or fact," unless a party shows prejudice).

[6] Iowa R. Civ. P. 1.914; *accord Handley v. Farm Bureau Mut. Ins. Co.*, 467 N.W.2d 247, 249 (Iowa 1991) (reviewing a ruling on a motion to sever for abuse of discretion).

the hearing, all parties—including the father—agreed to continue the permanency hearing and hold a concurrent hearing in October. The concurrent hearing aided in judicial economy and in placing the child in a permanent home as soon as possible. On the father's motion, the concurrent hearing was then continued to November. The father filed his motion to sever the hearing on November 17, two days before the beginning of the rescheduled concurrent hearing. Considering the delay in the concurrent hearing on the father's motion and his late request to sever the hearing, we find no abuse of discretion in the court's refusal to sever the hearing.

On constitutional grounds, the father objects to the concurrent hearing on procedural due process, substantive due process, and equal protection grounds. We review these constitutional claims de novo.[7] Procedural due process entitles the father to "notice and a meaningful opportunity to be heard."[8] The father does not explain how the concurrent hearing deprived him of notice or a meaningful opportunity to be heard, as the father had notice of and fully participated in the entire concurrent hearing. Thus, we find no violation of his procedural due process rights.

Substantive due process prohibits state action that is not "narrowly tailored to serve a compelling state interest" or that "shocks the conscience or otherwise offends judicial concepts of fairness and human dignity."[9] The father asserts the concurrent hearing created "risks of hurrying, miscommunications, and failures by

---

[7] *In re C.M.*, 652 N.W.2d 204, 209 (Iowa 2002).
[8] *In re K.M.*, 653 N.W.2d 602, 607 (Iowa 2002).
[9] *Id.*

witnesses, parties and counsel to appropriately address testimony and arguments towards one hearing or issue versus another." While parental rights are fundamental and terminating parental rights always invokes substantive due process, substantive due process is satisfied if at least "one of the 'statutory grounds for termination . . . [is] established by clear and convincing evidence.'"[10] Despite the father's concerns, the concurrent hearing did not prevent the father from contesting the statutory grounds for termination. Again, the father fully participated in the entire concurrent hearing and, as explained below, the State proved a statutory ground for termination. Thus, we find no violation of substantive due process.

Finally, equal protection requires "that similarly-situated persons be treated alike."[11] A heightened level of scrutiny applies when government action "classifies persons in terms of their ability to exercise a fundamental right."[12] Under this highest level of scrutiny, "the State must show 'that the classification is narrowly tailored to serve a compelling government interest.'"[13] The father asserts he was treated differently from parents with separate permanency and termination proceedings. Even assuming the father's claim triggers the highest level of scrutiny, our supreme court has found "the State's interest in obtaining a permanent home for a child as soon as possible is a compelling governmental

---

[10] *Id.* at 608 (alterations in original) (quoting *In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990)).

[11] *C.M.*, 652 N.W.2d at 210 (quoting *Bowers v. Polk Cnty. Bd. of Supervisors*, 638 N.W.2d 688, 689 (Iowa 2002)).

[12] *Id.* (quoting *In re Det. Of Williams*, 628 N.W.2d 447, 452 (Iowa 2001)).

[13] *Id.* (quoting *Williams*, 628 N.W.2d at 452).

interest."[14]  The concurrent hearing allowed the child to be placed in a permanent home as soon as possible while providing the father with a full opportunity to challenge termination.  Thus, we find no equal protection violation.  We therefore reject the father's constitutional challenges to the concurrent hearing.

### B.      Reopening the Record

The father argues the juvenile court should have granted his motion to reopen the record after the termination order so he could introduce evidence of his progress in substance-abuse treatment.  "When a juvenile court diligently enters a termination order after a hearing, there is generally no basis to complain about a discretionary refusal of the juvenile court to reopen the record . . . ."[15]  The father asserts his situation is similar to *L.T.*, where the supreme court found an abuse of discretion in denying the parent's motion to reopen the record based on "the long delay between the original hearing and the [parent's] motion to reopen the record, the fact that no final order had been entered, the germaneness of the matters that the [parent] sought to introduce, and the juvenile court's willingness to grant a similar motion to the State."[16]  Most of the factors in *L.T.* are absent here.  Almost twenty months passed between the end of the termination hearing and the motion to reopen in *L.T.*, compared to only three months here.[17]  While the father sought to introduce germane evidence here, he filed his motion after entry of the termination order, and the juvenile court never allowed the State to reopen the

---

[14] *Id.*
[15] *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).
[16] *Id.* at 526–27.
[17] *See id.*

record.[18] Also, the concurrent hearing, originally scheduled for October, concluded in December, providing the father additional time to introduce evidence of his progress. We find no abuse of discretion in denying the father's motion to reopen the record.

## III. Statutory Grounds for Termination.

Both parents challenge the statutory grounds for termination. The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(e), (g), (h), and (*l*). The court terminated the father's parental rights under section 232.116(1)(h) and (*l*). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."[19] We choose to examine termination under section 232.116(1)(h).

Under section 232.116(1)(h), the juvenile court may terminate parental rights if it finds all of the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

---

[18] *See id.*
[19] *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

Both parents challenge only the fourth element—that the child could not be returned to the parent's care at the end of the termination hearing without suffering adjudicatory harm.[20]

The mother argues the child could be returned to her care because she has maintained sobriety, is employed, and has housing and all other essentials to meet the child's needs. The mother's claims of sobriety are wholly unverified, as the mother failed to submit to drug testing and has not successfully participated in substance-abuse treatment. The mother has been vague about her sobriety throughout DHS involvement. Even though the DHS has been involved with the mother since December 2018, a DHS worker testified the mother consistently claims she has been sober for at most six months and the mother only acknowledges past substance abuse. A service provider noted that the mother did not appear sober during some interactions, and the mother showed a tendency to unexpectedly fall asleep during visits and services throughout DHS involvement. The mother inconsistently participated in substance-abuse treatment and was involuntary discharged due to lack of attendance. The mother only recently reengaged with substance-abuse treatment, and she has still not undergone a requested mental-health evaluation. Due to ongoing concerns about the mother's mental health and substance abuse, we agree the child cannot be safely placed in

---

[20] *See D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"); *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992) ("[A] child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication.").

her care, and the State proved a ground to terminate her parental rights under section 232.116(1)(h).[21]

Regarding the father, he testified on the final day of the hearing that he was still living at the residential treatment facility and unable to live with the child at the time. For this reason alone, the child could not be placed in his care at the time of the termination hearing, and the father's challenge fails. However, even if the father were living independently in a location where the child could also live, the risk of adjudicatory harm is too great to allow the child to be placed in his care.

As with the mother, the DHS requested the father undergo substance-abuse and mental-health evaluations and treatment shortly after the child's birth in February 2020. Despite these requests, the father largely failed to engage with services until paternity was established in July.[22] The father has never undergone a mental-health evaluation. The father has not addressed allegations he committed domestic violence.[23] The father entered substance-abuse treatment in August, around the same time the State filed the petition to terminate parental

---

[21] *See In re D.H.*, No. 18-1552, 2019 WL 156668, at *2 (Iowa Ct. App. Jan. 9, 2019) (collecting cases and finding failure to meaningfully address mental-health issues to be a valid basis for terminating parental rights); *A.B.*, 815 N.W.2d at 776 ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children.").

[22] Given the father's continued involvement with the mother, his knowledge of her pregnancy, his belief that he was the father, his knowledge of the child's birth, and the offering of services to him before paternity was established, we consider the father's efforts before paternity was formally established. *See In re T.O.*, No. 16-1963, 2017 WL 710560, at *2 (Iowa Ct. App. Feb. 22, 2017) (considering actions by the father prior to paternity being established when the father was still involved with the mother, knew she was pregnant, suspected he was the father, and was offered services).

[23] *See In re J.R.*, No. 17-0556, 2017 WL 2684405, at *3 (Iowa Ct. App. June 21, 2017) ("The threat to children posed by domestic violence in their home may serve as the basis for terminating parental rights.").

rights, but the father has not provided a full release of information for the DHS to monitor his progress.[24] Other than a test soon after the child was born, the father has never submitted to drug testing at the DHS's request. The father offered into evidence a printed summary of his drug test results for the treatment facility, which shows fourteen negatives and no positives during September and October. However, the father has not allowed the DHS to verify the accuracy of this summary with the facility. Even assuming the summary is accurate—a dubious assumption given the father's efforts to avoid DHS access to his records—the summary does not show the type of tests administered or the substances covered by the tests. Accepting as true the father's testimony that he has maintained sobriety since August, he only claims four months of sobriety after he has admittedly struggled with substance abuse since he was a teenager. On the final day of the termination hearing, the father testified he believes he could take care of the child while under the influence, indicating he still does not understand the effects of his substance abuse. We recognize the father's progress in substance-

---

[24] There was disagreement during the termination hearing as to whether the father provided a release so the DHS could monitor his progress at the substance-abuse treatment facility. Despite the father's testimony that he submitted releases to the facility, the DHS worker testified the facility said the father had not authorized the release of his information. The father submitted as evidence copies of two releases he claims he provided to the facility. Both of these documents only allow a partial release of information to the DHS, most notably refusing to release test results to the DHS. Even if we assume the father provided these releases to the facility and the facility erroneously declined to share some of the father's information, the father still refused to allow the DHS to fully monitor his progress in treatment.

abuse treatment, but it simply comes too late in the termination process, after the father ignored the DHS's offered services for months.[25]

Due to the father's living situation and ongoing substance-abuse and mental-health concerns, we agree the child could not be returned to his care, and the State proved a ground to terminate his parental rights under section 232.116(1)(h).

## IV. Additional Time for Reunification

Both parents argue the juvenile court should have granted their requests for additional time for reunification.[26] In granting an extension, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."[27] However, "[w]e will not gamble with a child's future by asking [the child] to continuously wait for a stable biological parent, particularly at such a tender age."[28] In evaluating the parents' requests for additional time, we recognize the termination hearing was originally scheduled to begin in October and concluded in

---

[25] *See C.B.,* 611 N.W.2d at 495 ("Time is a critical element. A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting.").

[26] *See* Iowa Code §§ 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if the court decides to not terminate parental rights); *see also id.* § 232.104(2)(b) (establishing a permanency option to authorize a six-month extension of time if the court determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period").

[27] *Id.* § 232.104(2)(b).

[28] *In re D.S.,* 806 N.W.2d 458, 474 (Iowa Ct. App. 2011).

December, providing the parents with an additional two months to demonstrate their progress.

The mother has ongoing mental-health and substance-abuse concerns, as described above. She has not addressed her mental-health issues. She has sporadically addressed her substance abuse and only recently reengaged with substance-abuse treatment. Therefore, we are not confident the need for removal will no longer exist after an additional six months, and we agree with the denial of the mother's request for additional time.

At first glance, the father appears to state a better case for a six-month extension. He was in treatment at the time of the termination hearing, supporting his claim that some additional time is warranted. However, after a deeper look, we reject the father's claim as well. Like the mother, the father has ongoing mental-health and substance-abuse concerns. As explained above, the father's four months of progress in substance-abuse treatment comes too late after failing to engage in services for the first five months of the child's life. We also take into account that the father has been at least wily, if not downright obstructive, in his efforts to keep the DHS from having full access to his substance-abuse treatment details. Considering the child's need for permanency and the father's delay in seeking treatment for his long-standing substance-abuse issues, we are not confident the need for removal will no longer exist after an additional six months. So, we agree with the denial of the father's request for additional time.

## V.     Reasonable Efforts

For his final issue, the father argues the juvenile court should have ordered the DHS to provide him with additional reunification services as part of his

challenge to the DHS's obligation to make reasonable efforts.[29]  The father filed a request for services right after paternity was established.  The father filed a motion for reasonable efforts about three months later, which was before the termination hearing.  The motion renewed his earlier request for services.  The court denied his motion for reasonable efforts at the same time it ordered the termination of his parental rights.

The DHS must "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child."[30]  This "reasonable efforts requirement is not viewed as a strict substantive requirement of termination.  Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts."[31]  "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent."[32]

The DHS offered numerous services to the father, including a child protective assessment; flex funds; parenting curriculum; visitation; mental-health

---

[29] Within a heading in her petition to us, the mother also mentions she should have been provided additional services.  However, she makes no argument on a reasonable-efforts issue.  *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").  Also, it does not appear the mother requested additional services or otherwise challenged the DHS's efforts prior to the termination hearing.  *See C.B.*, 611 N.W.2d at 493–94 ("We have repeatedly emphasized the importance for a parent to object to services early in the process so appropriate changes can be made.").  For these reasons, the mother has not properly presented a reasonable-efforts claim on appeal.  Even if the mother did properly raise a reasonable-efforts challenge, we would reject her challenge for the same reasons we reject the father's challenge.

[30] Iowa Code § 232.102(7).

[31] *C.B.*, 611 N.W.2d at 493.

[32] *Id.*

evaluation and treatment; and substance-abuse evaluation and treatment. As explained above, the father failed to take full advantage of these offered services.[33] Furthermore, the DHS provided some of the services the father requested in his initial request when he reengaged with the DHS, including visitation and the parenting curriculum. The father particularly complains about the frequency of his visitation with the child, but the DHS worker testified the father often refused visitation before paternity was established and his treatment facility prevented him from attending visitation during the orientation phase. Considering all of the services provided to the father and his failure to take full advantage of those services, we find reasonable efforts were made to avoid out-of-home placement, but placement with the father could not occur despite those reasonable efforts. The failure to provide additional services does not prevent termination of the father's rights.

## VI.    Conclusion

Due to ongoing concerns about the parents' mental health and substance abuse, we find the State proved a statutory ground for termination, and we reject their requests for an additional six months for reunification. We also reject the father's statutory and constitutional objections to holding concurrent permanency and termination proceedings, find no abuse of discretion in denying the father's

---

[33] *See In re C.P.*, No. 2018 WL 6131242, at *3 (Iowa Ct. App. Nov. 21, 2018) (finding a parent's "failure to use the services provided defeats [a] reasonable-efforts claim").

motion to reopen the record, and conclude reasonable efforts were made to avoid out-of-home placement.

**AFFIRMED ON BOTH APPEALS.**